IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

          Plaintiff,

Vs.                                                            No.  07-40041-01-SAC

MARK E. KASSON,

          Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the sentencing of the defendant following his entry of a guilty plea to an information that charged him with a violation of 18 U.S.C. § 1006 in that while an officer and employee of Credit Union Group ("CUG") he made a false accounting entry on this financial institution's records indicating $3,000,000 of loans had been participated with the intent to deceive auditors and examiners from the Kansas Department of Credit Unions and the National Credit Union Administration Board.  The presentence report ("PSR") recommends a guideline range of 57 to 71 months, and the addendum addressing objections and responses spans more than one hundred paragraphs.  The defendant has filed a lengthy sentencing memorandum (Dk. 12) summarizing and restating his numerous objections to the PSR.  He also

has filed a motion for judicial recommendation of placement. (Dk. 13). The government has filed a response opposing the defendant's sentencing memorandum and opining that the defendant's objections to the PSR, in particular his liability for restitution, are in breach of his duty to continue manifesting acceptance of responsibility and in breach of the plea agreement. (Dk. 14). Following the government's allegation that he was in breach, the defendant filed a motion to enforce the plea agreement. (Dk. 15). By this order, the court will resolve the pending motions and objections, beginning with the defendant's motion to enforce.

**MOTION TO ENFORCE PLEA AGREEMENT (Dk. 15).**

When the defendant filed numerous objections to the PSR, the government was most troubled by the defendant's claim that he was not subject to restitution. The government says it cautioned the defendant that continuing in this position was inconsistent with accepting responsibility. The government further pointed out that the defendant knew his former employer had filed a claim on its fidelity bond based on the defendant's unfaithful performance and dishonest acts. "The government cautioned Kasson that this was precisely the conduct to which he pled guilty." (Govt's Response, Dk. 14, p. 2); *see* PSR at ¶¶ 108-109. According to the

government, it then advised the defendant that "it would not consider the plea agreement breached by the defendant unless and until he filed a formal sentencing memorandum with the Court in which he took the position that he is not subject to a restitution order, claiming he did not plead guilty to acts of dishonesty in his capacity as an officer of the credit union should result in restitution." *Id.* at pp. 2-3. The defendant moves the court to enforce the plea agreement asserting he did not breach the agreement and arguing that the government's position is legally inconsistent with the terms of the plea agreement and is factually contradicted by the PSR.

A court is to apply general contract principles in defining the content and scope of the parties' obligations under a plea agreement. *See, e.g., United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003). Thus, "if a defendant lives up to his/her end of the bargain, the Government is bound by its promises," but "if a defendant fails to fulfill his/her promises, the Government is released from its obligations." *United States v. Ailsworth,* 927 F. Supp. 1438, 1445 (D. Kan. 1996). The party asserting a breach has the burden of proving the same by a preponderance of the evidence. *Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir.), *cert. denied*,

516 U.S. 1000 (1995).

In determining a breach, a court looks to the agreement's express terms to identify not only the nature of the promises made but also the defendant's reasonable understanding of those promises at the time of the entry of the guilty plea.  *See, e.g., United States v. Rockwell Intern. Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997), *cert. denied*, 523 U.S. 1093 (1998).  A court construes ambiguities against the government, to the extent it is responsible for them as the drafting party.  *United States v.Peterson*, 225 F.3d 1167, 1171 (10th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).  A court evaluates the whole record to determine whether a breach has occurred.  *See United States v. Rodriguez-Delma*, 456 F.3d 1246, 1251 (10th Cir. 2006) (concluding after "consideration of the entire record" that government did not breach plea agreement), *cert. denied*, --- U.S. ----, 127 S. Ct. 1338 (2007).

The government may not unilaterally declare a defendant's breach of the plea agreement and proceed as if no longer obligated by its mutual promises.  If the parties' pleadings show there to be a factual dispute over the issue of the breach, the court "must hold a hearing and make a finding that the defendant breached the agreement before the

4

government is released from its obligations under the agreement." *United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003). Thus, the court must determine first whether the plea agreement was breached by either the defendant or the government. *Id.* Should the court find that the defendant has not breached the plea agreement, the government is not released from its obligations and shall be ordered to comply with the same.

"'When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*'" *United States v. Cooper*, 70 F.3d 563, 565 (10th Cir. 1995) (quoting *Santobello v. New York*, 404 U.S. 257, 269 (1971)). "Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence." *United States v. Stemm*, 847 F.2d 636, 637 (10th Cir. 1988) (quotation marks and citation omitted). "The government owes the defendant a duty to pay 'more than lip service' to a plea agreement." *United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007). "When a plea agreement leaves discretion to the prosecutor, the court's role is limited to deciding whether the prosecutor has made its determination in good faith." *United States v. Vargas*, 925 F.2d 1260, 1266 (10th Cir. 1991).

### Relevant Terms of the Plea Agreement

The parties agreed to the facts constituting the offense to which the defendant pleaded guilty. (Dk. 9, Plea Agrmt. ¶ 2). Those facts were that the defendant on or about January 10, 2006, made an accounting entry on CUG's records "indicating that $3,000,000 of loans had been participated" when the defendant knew the loans had not been participated and knew the entry would cause CUG's financial position to appear different than it actually was when reviewed by state and federal examiners. *Id.* The parties then expressly "acknowledge[d] that the foregoing facts are those that form the basis for the plea agreement and the relevant conduct." *Id.* at ¶ 3. The parties also "preserve[d] the right to contest any findings contained in the presentence investigation." *Id.* The parties observed that they understood the court was not bound by their position in this regard. *Id.*

>At ¶ 4, the government agreed to the following:
>
>a. To not file any additional charges . . . .;
>
>b. To recommend a sentence and a fine, if any, at the low end of the applicable guideline range;
>
>c. To recommend the defendant receive a . . . reduction for acceptance of responsibility. . . . However, the government's obligation concerning acceptance of responsibility is contingent

upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to his involvement, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the United States reserves the right to withdraw this recommendation without breaching this agreement;

d. To not advocate any relevant conduct beyond the facts set forth in paragraph 2.

In the event the defendant breaches or violates this plea agreement or otherwise fails to adhere to its terms, the United States shall not be bound by this paragraph and may pursue any additional charges arising from the criminal activity under investigation as well as any perjury, false statement, or obstruction of justice charges which may have occurred.

*Id.* at ¶ 4.

At ¶ 6, the defendant acknowledged that his sentence would be determined solely by the court. This paragraph also noted the following agreement on the manner of computing the advisory guideline sentence range:

The parties have agreed on the following non-binding sentencing guideline computation based on the factual basis set forth in paragraph 2: The base offense level is 7 under U.S.S.G. § 2B1.1. The base offense level is increased by 2 levels for abuse of a position of trust under U.S.S.G. § 3B1.3. The base offense level is decreased by 2 levels for acceptance of responsibility under U.S.S.G. § 3E1.1. The total offense level is 7.

*Id.* ¶ 6.

## Restitution

The PSR recommends restitution in the amount of $246,310.93 pursuant to the terms of 18 U.S.C. § 3663A based on a loss of $66,310.93 to Free State Credit Union and a loss of $180,000 to Cumis Insurance Society. (PSR ¶ 67). The PSR calculates this loss at ¶¶ 18 and 19, as here quoted:

> 18. Bryant [NCUA examiner] determined that as of January 31, 2006 the credit union managed by Kasson had $615,550 invested in or loaned to CUGE [Credit Union Group Enterprises which was a service organization providing services to CUG]. It was discovered this money was used by CUGE to purchase three ATM machines, to purchase two lots which were used by this defendant to build spec homes for re-sale, to purchase five additional building lots for future development, for computer loan origination software owned by CUGE, but leased back to CUG, and was also used to loan money out to other people at extraordinarily high interest rates. Since the defendant's termination from CUG, the defendant has reached a settlement with CUG and the NCUA. . . . After calculating all credits from the settlement, the CUG still lost $246,310.93 from the $615,550 loaned to CUGE.
>
> 19. After determining the loss of $246,310.93 by CUG, a claim was filed with CUG's bonding compancy, CUNA Mutual Group, which insured the credit union against losses caused by an employee of the credit union.

A court may order restitution only when authorized by statute. *United States v. Gordon*, 480 F.3d 1205, 1210 (10th Cir. 2007). In reliance on *Hughey v. United States*, 495 U.S. 411 (1990), the Tenth Circuit

interpreted the restitution provisions under the Victim and Witness Protection Act as authorizing restitution "only for losses caused by conduct underlying the offense of conviction." *United States v. Brewer*, 983 F.2d 181, 183-84 (10th Cir.), *cert. denied*, 508 U.S. 913 (1993). The 1996 Amendments under the Mandatory Victim Restitution Act "did not change the general rule that restitution may only be ordered for losses caused by the offense of conviction." *United States v. Gordon*, 480 F.3d at 1211. The recognized statutory exceptions to this rule are where the offense of conviction involved a "scheme, conspiracy, or pattern of criminal activity" as an element, 18 U.S.C. § 3663A(a)(2), and where the parties have agreed to restitution to more persons than the victims of the offense of conviction, 18 U.S.C. § 3663A(a)(3). *See id.* Neither exception to this rule is advocated here.

### Asserted Breach

The government's assertions measured against the plain and unambiguous terms of the plea agreement reveal no breach by the defendant. The parties agreed the offense conduct in ¶ 2 was the factual basis of their agreement "**and the relevant conduct.**" (Dk. 9, ¶ 3) (emphasis added). The parties further preserved their "right to contest any

9

findings contained in the presentence investigation." *Id.*  The parties plainly agreed on a particular understanding of relevant conduct and on their ability to contest PSR findings.  It would be an unreasonable reading of these terms to hold that a defendant could not rely on the agreed scope of relevant conduct in objecting to any finding of restitution.  Thus, if the defendant's objections to restitution are properly grounded in part on this agreed scope of relevant conduct and on the law governing restitution, then his objections are not inconsistent with a continuing manifestation of acceptance of responsibility or with any other obligation in the plea agreement.

The defendant objected in part to the loss calculations in the PSR based on the plea agreement's impact on relevant conduct findings.  The defendant observed that as alleged in the indictment the false accounting entry did not actually change CUG's financial position but only made it appear different.  The defendant further pointed out that the restitution recommended in the PSR was not for losses sustained by victims as a result of the offense of conviction but as a result of unrelated conduct.  The defendant has reasonably advocated objections that are sustained by the terms of the plea agreement and by the law governing

restitution.[1]

The PSR offers no causal connection between the agreed offense conduct of ¶ 2 and the losses involved in the restitution calculations. As reflected in the PSR, those losses resulted from the defendant's involvement in CUG loaning money to CUGE and not from the defendant's false accounting entry. The PSR writer expressly draws this conclusion in pointing out that should the court accept the defendant's objection to any relevant conduct beyond the agreed offense of conviction then "there would be no loss, restitution, or victim impact." (PSR, ¶ 146).

In this regard, it is even more significant that the government took this very same position when it entered into the plea agreement. The government agreed then that the appropriate sentencing guideline computation based on ¶ 2 conduct would include no specific offense characteristic for a loss greater than $5,000. (Dk. 9, Plea Agrmt. ¶ 6).

---

[1]The court acknowledges the defendant's objections extend to denying the truthfulness and accuracy of additional conduct as constituting relevant conduct. On the terms of this agreement and the facts of this case, the court is disinclined to find the defendant no longer manifests acceptance of responsibility in making a record of his objections to this additional conduct in order to preserve his rights as permitted by the plea agreement. This approach is particularly compelling when the government has already agreed the additional conduct should not be considered in sentencing the defendant for this offense.

11

Plainly, the government did not consider the defendant's offense conduct to have any significant financial consequences.  The government now takes a markedly different position:

> Kasson received substantial concessions from the government, obtaining the government's agreement to not file additional charges. It was clearly expected by the government, that he would accept responsibility for this dishonest act of falsifying the records of a federally insured institution to mislead the institutions examiners, and maintain that acceptance throughout the sentencing process. However, to admit the crime but deny the financial consequences is not acceptance of responsibility.
> . . . .
> It would appear that Kasson's motivation is simply to avoid the financial consequences of his criminal conduct.  He does not want to be financially responsible to repay the fidelity bond claim occasioned by his criminal conduct.  However, no principled argument would support a defendant's ability to claim acceptance of responsibility for the crime, but deny that he is responsible for the financial consequences of the crime.

(Dk. 14, pp. 4-5).  The government's memorandum offers no meaningful explanation for this change in position.  As already set forth above, the defendant here has several principled and substantive grounds for objecting to the loss and restitution amounts found in the PSR.  Finally, the government's memorandum proffers nothing in proof or arguments to establish what amount of loss was caused by the false entry of participated loans.

Based on the pleadings and arguments of record, the court

finds the government is unable to carry its burden of showing that the defendant has breached the plea agreement or that there is a good faith reason for withholding its recommendation for acceptance of responsibility based on the defendant's objection to restitution as recommended in the PSR.  The court sustains the defendant's objection to the recommended restitution, because those are not losses resulting from the offense of conviction on the facts as presented in the PSR.  The court expects the government will abide fully with its obligations in the plea agreement and orders the same.

**PENDING OBJECTIONS TO PSR**

The court accepts as reasonable and appropriate the parameters on relevant conduct established in the plea agreement.  The court has reviewed the defendant's additional conduct as manager of CUG that is summarized in the PSR.  The court appreciates that there are a number of serious hurdles and issues requiring extensive and substantial proof and detailed findings before these additional assertions could be established as relevant conduct under U.S.S.G. § 1B1.3.  The court does not expect such proof or arguments in light of the plea agreement. The court sustains the defendant's objections to the PSR's guideline

calculations that rely on relevant conduct findings beyond the offense and relevant conduct which the parties agreed upon in ¶ 2 of the plea agreement. The result of this ruling is a total offense level of seven (a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1) without a specific offense characteristic for loss or for jeopardizing the safety and soundness of a financial institution and without an enhancement for obstruction of justice but with a two-level increase for abuse of position of trust pursuant to U.S.S.G. § 3B1.3 and a two-level reduction for acceptance of responsibility). As calculated under the applicable 2007 Sentencing Guidelines,[2] the advisory guideline range is 0 to 6 months falling within Zone A of the Sentencing Table, and the court is aware of the sentencing options discussed at U.S.S.G. § 5C1.1, the optional supervised release provision at U.S.S.G. § 5D1.1, and the fine range of $500 to $5,000 at U.S.S.G. § 5E1.2(c)(3).

       The court sustains the defendant's objection to restitution and will not order any for the reasons discussed above. Because the court intends to impose a modest fine and a short period of supervised release, it

---

[2]The defendant concedes there is no difference between these guideline calculations and those made under the guidelines effective November 1, 2005.

14

overrules the defendant's objections to ¶¶ 63(d)--63(f) of the special conditions of release. These conditions will assist the supervising officer in enforcing this financial obligation and in protecting the public from someone who has committed financial fraud. As stated in his sentencing memorandum, the defendant considers his objections for departure and variance to be moot in light of the court's other rulings.

The court sustains the defendant's motion for judicial recommendation of placement to the minimum security facility in Tucson, Arizona, should the defendant be sentenced to a term of imprisonment. The court will reserve its discussion of the factors under 18 U.S.C. § 3553(a) for the sentencing hearing.

IT IS THEREFORE ORDERED that the defendant's motion for judicial recommendation of placement (Dk. 13) and motion to enforce the plea agreement (Dk. 15) are granted;

IT IS FURTHER ORDERED that the defendant's pending objections to the PSR are granted in part and denied in part.

Dated this 20th day of August, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge